United States District Court
Southern District Indiana
Indianapolis Division

**Easton Fields**,

       Plaintiff,

  v.

**Trans Union, LLC**; **Equifax Information Services, LLC**; **Experian Information Solutions, Inc.**; **Credit Karma**; **Capital One**; **Discover Bank**; **JP Morgan Chase Bank;** and **Weltman, Weinberg, and Reis**,

       Defendants.

Case No.

## Complaint and Jury Demand

Plaintiff, Easton Fields, brings this Complaint and Jury Demand against Defendants, Trans Union, LLC ("**Trans Union**"); Equifax Information Services, LLC ("**Equifax**"); Experian Information Solutions, Inc. ("**Experian**"), and Credit Karma ("**Credit Karma**") (Trans Union, Equifax, Experian, and Credit Karma, collectively, the "**CRA Defendants**"); Capital One ("**Capital One**"); Discover Bank ("**Discover**"); and JP Morgan Chase Bank ("**Chase**"); and Weltman, Weinberg, and Reis ("**Weltman**") (Capital One, Discover, Chase, and Weltman collectively, the "**Furnisher Defendants**") (the CRA Defendants and the Furnisher Defendants, collectively, the "**Defendants**"), for actual, statutory, and punitive

1

damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act[1] (the "**FCRA**"), arising out of Defendants' reporting of fraudulent tradelines and collection accounts.

## Preliminary Statement

1.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the FCRA to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure that consumer reporting agencies ("**CRAs**") exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to the CRAs, otherwise known as "**furnishers**."

2.     The purpose of the FCRA is to require CRAs to "adopt reasonable procedures for meeting the needs of commerce for consumer credit,

---

[1] 15 U.S.C. 1681, *et seq.* Unless otherwise stated, all "**Section**" references are to the FCRA.

personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."[2] In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that CRAs, Section 1681i, and furnishers, Section 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit files or consumer reports (aka "**credit reports**").

3. This case concerns Defendants' reporting of multiple fraudulent tradelines on Plaintiff's credit files, disclosures, and consumer reports, which were opened by an identity thief using Plaintiff's personal, private information.

4. Plaintiff brings claims against the CRA Defendants for failing to follow reasonable procedures to ensure the maximum possible accuracy of her credit reports in violation of Section 1681e(b) and for their failure to fulfill their reinvestigation duties in violation of Section 1681i.

5. Plaintiff brings claims against the Furnisher Defendants for failing to fulfill their investigation duties in violation of Section 1681s-2(b).

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

---

[2] Section 1681 (*emphasis added*).

7.  Any violations by each Defendant were either negligent, knowing, willful, or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

8.  Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## Parties

9.  Plaintiff resides in Indianapolis, Indiana. Plaintiff is a consumer as defined by Section 1681a(c) of the FCRA.

10. Trans Union is a consumer reporting agency as defined by Section 1681a(f) and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis'' as defined by Section 1681a(p). Trans Union regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers for the purpose of furnishing consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Trans Union provides such consumer credit reports to third-party subscribers for monetary compensation.

11. Equifax is a consumer reporting agency as defined by Section 1681a(f) and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis'' as defined by Section 1681a(p).  Equifax

regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers for the purpose of furnishing consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Equifax provides such consumer credit reports to third-party subscribers for monetary compensation.

12.    Experian is a consumer reporting agency as defined by Section 1681a(f) and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis'' as defined by Section 1681a(p). Experian regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers for the purpose of furnishing consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Experian provides such consumer credit reports to third-party subscribers for monetary compensation.

13.    Credit Karma is a consumer reporting agency as defined by Section 1681a(f). Credit Karma regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers for the purpose of furnishing consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Credit Karma provides such consumer credit reports to third-party subscribers for monetary compensation.

14. Capital One is a "furnisher" of credit information, as that term is defined by the FCRA.

15. Discover is a "furnisher" of credit information, as that term is defined by the FCRA.

16. Chase is a "furnisher" of credit information, as that term is defined by the FCRA.

17. Weltman is a "furnisher" of credit information, at that term is defined by the FCRA.

## Jurisdiction

18. This lawsuit is being brought pursuant to the FCRA presents a federal question, and as such, jurisdiction arises under 28 U.S.C 1331 and 15 U.S.C 1681, *et seq.*

19. Venue is proper within this district and division pursuant to 15 U.S.C. 1681p and 28 U.S.C. 1391(b).

## Factual Allegations

### Plaintiff is the Victim of Identity Theft

20. Plaintiff is the victim of identity theft at the hands of Dionne Fields (the "**Identity Thief**").

21.    The Identity Thief has obtained credit in Plaintiff's name, taken over Plaintiff's accounts and has, in numerous other ways, assumed and used Plaintiff's identity.

22.    The Identity Thief obtained and defaulted numerous credit card accounts which she opened with Discover and Chase using Plaintiff's personal identifying information, resulting in numerous tradelines (aka credit accounts) being added to Plaintiff's Trans Union, Equifax, and Experian credit files.

23.    The Identity Thief obtained and took control over Plaintiff's Capital One accounts using Plaintiff's personal identifying information, resulting in numerous fraudulent charges being billed to those accounts and ultimately furnished to Plaintiff's Trans Union, Equifax, and Experian credit files.

24.    The Identity Thief added herself as an authorized user to Plaintiff's Capital One tradelines.

25.    The Identity Thief caused the Capital One tradeline account information to change to her own personal identifying information for purposes of concealing her account take over.

26.    Plaintiff's credit files included information which does not belong to Plaintiff and is the result of identity theft (collectively and together with any other not listed or not known and yet to be discovered inaccurate information maintained by the CRAs, the "**Inaccurate Information**"):

| Personal Identifing Information | CRA |
|---|---|
| XXX Howard Street, Shelbyville, Indiana | ALL |
| (317) XXX-0088 | ALL |
| (317) XXX-3175 | ALL |
| Dionne Fields | ALL |
| **Tradelines** | |
| Capital One, Account No. ….9862 (Take Over) | ALL |
| Capital One, Account No. ….7477 (Take Over) | ALL |
| Discover, Account No. ….2636 (Fraud) | ALL |
| Chase, Account No. ….9500 (Fraud) | ALL |
| Credit Karma (Fraud) | ALL |
| Weltman (Fraud) | ALL |
| **Other Information** | |
| Credit Scores | ALL |
| Inquiries (Multiple): Discover | ALL |
| Inquiries (Multiple): Chase | ALL |
| Inquiries (Multiple): Credit Karma | ALL |
| Inquiries (Multiple): Mission Lane | ALL |
| Inquiries (Multiple): Webbank | ALL |
| Inquiries (Multiple): GM Financial | ALL |
| Inquiries (Multiple): T-Mobile | ALL |
| Inquiries (Multiple): One Capital Lending | ALL |
| Inquiries (Multiple): CB Indigo | ALL |
| Inquiries (Multiple): CBFiservcheckfree Corp | ALL |
| Inquiries (Multiple): weltmanweinbergreis | ALL |
| Inquiries (Multiple): Creditone Bank | ALL |
| Inquiries (Multiple): Credit 9 LLC | ALL |

| Inquiries (Multiple): Merrick Bank | ALL |
| Inquiries (Multiple): Ollo/Merrick Bank | ALL |
| Inquiries (Multiple): Webbank/One Main | ALL |
| Inquiries (Multiple): One Main | ALL |
| Inquiries (Multiple): All Direct Lending | ALL |

27. Plaintiff never opened and is not responsible or liable for the Discover, Weltan, and Chase tradelines. Each of these tradelines was opened by the Identity Thief without Plaintiff's knowledge, consent, or control.

28. Weltan acts as Discover's collection agency.

29. Plaintiff is not responsible for the fraudulent charges made by the Identity Thief to his Capital One tradelines.

30. In addition to sending mail to other addresses not belonging to Plaintiff, the Identity Thief also stole Plaintiff's mail when mailed to addresses where Plaintiff received mail.

31. Before Plaintiff discovered the Identity Thief's fraud, the Identity Thief also impersonated Plaintiff and contacted the CRA Defendants to dispute the fraudulently opened accounts, which were at that time reporting as derogatory.

32. Plaintiff never applied for credit with Discover or Chased. These applications were made by the Identity Thief posing as Plaintiff.

*Plaintiff Disputed the Inaccurate Information with the CRAs*

33. Plaintiff has disputed the Inaccurate Information through the CRA Defendants since October 2025, including, but not limited to, disputes made in October 2025, November 2025, December 2025, and January. Plaintiff made additional disputes with the CRA Defendants and the Furnisher Defendants as well.

34. Plaintiff made these disputes by phone, by regular mail, and online.

35. Plaintiff included with her disputes an identity theft affidavits and police reports.

36. The CRA Defendants sent Plaintiff's disputes to the Furnisher Defendants in the form of Automated Consumer Dispute Verifications ("**ACDVs**") via the e-OSCAR online dispute processing system.

37. The Furnisher Defendants received Plaintiff's disputes from the CRA Defendants and responded by returning those ACDVs to the CRA Defendants.

38. The Furnisher Defendants can identify the ACDVs they received from the CRA Defendants by searching for those ACDVs in the e-OSCAR system using Plaintiff's identifying information.

39. The CRA Defendants failed and/or refused to remove some or all of the Inaccurate Information from Plaintiff's credit files.

40.    The Furnisher Defendants failed and/or refused to instruct the CRA Defendants to remove some or all of the Inaccurate Information from Plaintiff's credit files.

41.    Trans Union failed to conduct reasonable investigations of Plaintiff's disputes.

42.    Equifax failed to conduct reasonable investigations of Plaintiff's disputes.

43.    Experian failed to conduct reasonable investigations of Plaintiff's disputes.

44.    In responding to the ACDVs it received from the CRA Defendants, the Furnisher Defendants instructed the CRA Defendants to leave its fraudulent tradelines on Plaintiff's credit files.

*CRA Reporting of the Inaccurate Information Provided by the Furnishers Caused Plaintiff to be Denied Credit on Numerous Occasions*

45.    As a result of Defendants' failures to comply with their duties under the FCRA, Plaintiff has been denied credit.

46.    Plaintiff's credit denials resulted from inaccurate information furnished by the Furnisher Defendants and included in consumer reports about Plaintiff by the CRA Defendants.

47.    Plaintiff suffered other credit denials due to inaccurate information furnished by the Furnisher Defendants and included in consumer reports about Plaintiff by the CRA Defendants.

*General Relevant Allegations*

48. Plaintiff disputed the inaccuracies on his credit files on multiple occasions.

49. Upon information and belief, the CRA Defendants forwarded those disputes to the Furnisher Defendants.

50. Despite Plaintiff's multiple disputes, the CRA Defendants have failed to correct Plaintiff's credit files.

51. Despite Plaintiff's multiple disputes, the Furnisher Defendants have failed to instruct the CRA Defendants to correct Plaintiff's credit files.

52. Despite Plaintiff's multiple disputes, the Furnisher Defendants have failed to verify the accuracy of their reporting and to inform the CRA Defendants that accuracy could not be verified.

53. The CRA Defendants failed to maintain reasonable procedures to create Plaintiff's credit files and/or to prevent Plaintiff's credit information and/or credit files from including credit information, which is the result of identity theft.

54. The Defendants know that their databases cause identity theft credit information to be added to victim credit files.

55. The Defendants have been sued by consumers and suffered judgments as a result of including identity theft credit information in consumer credit files and consumer reports.

56.    The CRA Defendants never conducted any investigation into Plaintiff's disputes.

57.    The Furnisher Defendants never conducted any investigation into Plaintiff's disputes.

58.    The CRA Defendants have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of her consumer reports.

59.    The CRA Defendants have failed to comply with their reinvestigation duties.

60.    The Furnisher Defendants failed to comply with their investigation duties.

61.    Within the last two (2) years, Plaintiff has requested a copy of her credit files from the CRA Defendants but did not receive all of her credit files or all of the information contained in her credit files or within the CRA Defendants' databases pertaining to Plaintiff.

62.    A consumer's right to dispute information contained in a consumer report is an important safeguard necessary to ensure accuracy. The legislative history of the FCRA rightly characterizes the dispute and correction process as the heart of efforts to ensure the ultimate accuracy of a consumer report.

63.    Within the two years previous to the filing of this Complaint, the CRA Defendants prepared and distributed one or more consumer reports, as the term is defined by Section 1681a(d) of the FCRA, pertaining to Plaintiff that

contained misleading, incomplete, and/or inaccurate information belonging to other consumers and/or resulting from identity theft.

64. The Defendants' failures to comply with their FCRA duties are negligent and/or willful.

# Claims for Relief

## FCRA Claims Against the CRA Defendants

### Count 1 - Trans Union
### Count 2 - Equifax
### Count 3 - Experian
### Count 4 - Credit Karma

65. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[3]

66. The CRA Defendants have actual knowledge, by and through numerous other consumer lawsuits, thousands of complaints filed with the Better Business Bureau ("BBB"), actions by the FTC, and numerous state attorney generals, that consumer credit files contain inaccurate information resulting from identity theft.

67. Despite their actual knowledge of an ongoing and chronic identity theft problem, the CRA Defendants reported and continued to report after

---

[3] Section 1681e(b).

Plaintiff's disputes, Plaintiff's credit file with the fraudulent tradelines, collection accounts, public records, and identifying information. The CRA Defendants' reporting and dispute procedures slandered, harmed, and humiliated Plaintiff by being strapped with derogatory credit information that did not belong to her, thereby damaging her credit reputation and ability to obtain credit.

68. The CRA Defendants maintained sufficient information to conclude that the fraudulent tradelines, collection accounts, public records, and identifying information did not belong to Plaintiff and, therefore, should not be maintained with Plaintiff's credit file.

69. The CRA Defendants did not maintain sufficient information to conclude that certain tradelines and identifying information actually belonged to Plaintiff but maintained that information in Plaintiff's credit files nonetheless.

70. The CRA Defendants have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and Plaintiff's consumer reports.

71. The CRA Defendants have failed to properly investigate Plaintiff's disputes on at least one occasion.

72. The CRA Defendants have allowed unverifiable information to remain on Plaintiff's credit files.

73. The CRA Defendants have failed to disclose the complete contents of Plaintiff's credit file(s) to Plaintiff.

74. The CRA Defendants have failed to provide Plaintiff with the information contained in her credit file(s).

75. The CRA Defendants have failed to block the disputed inaccurate information after receiving a police report and identity theft affidavit from Plaintiff.

76. Plaintiff has suffered damages, including the denial or inability to obtain credit, and various forms of emotional distress, including frustration, confusion, anger, depression, and a general feeling of helplessness, as a result of the actions and inaction of the CRA Defendants.

77. Plaintiff's actual damages include both pecuniary and non-pecuniary damages.

78. Plaintiff has been denied credit, has suffered financial loss, delay in obtaining approval for credit, loss of credit opportunity, out-of-pocket expenses, and time expended in disputing errors.

79. Plaintiff has suffered emotional distress, pain and suffering or humiliation, loss of sleep, nervousness, frustration, mental anguish over a credit report, injury to her reputation, and injury to her sense of well-being.

80. Others can corroborate the emotional distress suffered by Plaintiff.

81. The CRA Defendants' failure to prevent fraudulent information of the type described herein (along with other FCRA violations) caused and continues to cause Plaintiff emotional distress, impaired Plaintiff's ability to obtain credit, and damaged her credit scores.

82. Plaintiff has also spent numerous hours of her time attempting to educate herself about these issues and attempting to have the CRA Defendants' inaccurate reporting corrected.

83. It distressed Plaintiff to learn that the CRA Defendants have either failed to create her credit file and/or had mixed her credit data with fraudulent credit data.

84. It distressed Plaintiff to know that her credit reputation had been harmed and that she risked possible future embarrassment when seeking credit.

85. It distressed Plaintiff to know that her creditors (who view her credit history on a regular basis to make decisions about a new credit or more favorable terms on existing credit) and potential creditors who might offer her credit would have seen this inaccurate information and incorrectly concluded that she was not creditworthy.

86. The CRA Defendants have negligently violated Section 1681e; alternatively, the CRA Defendants have willfully violated Section 1681e.

87. The CRA Defendants have negligently violated Section 1681i; alternatively, The CRA Defendants have willfully violated Section 1681i.

88.  The CRA Defendants have negligently violated Section 1681c; alternatively, the CRA Defendants have willfully violated Section 1681c-2.

89.  The CRA Defendants have negligently violated Section 1681g; alternatively, the CRA Defendants have willfully violated Section 1681g.

90.  Plaintiff has suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## Claims for Relief

### FCRA Claims Against the Furnisher Defendants

**Count 4 - Capital One**
**Count 5 - Discover**
**Count 6 - Chase**
**Count 8 - Weltman, Weinberg, and Reis**

91.  This is a claim for violations of the federal Fair Credit Reporting Act.

92.  The Furnisher Defendants furnished credit information about Plaintiffs to the CRA Defendants.

93.  The Furnisher Defendants are subject to the requirements of the FCRA, including those duties set out in Section 1681s-2(b).

94.  At all relevant times, the Furnisher Defendants provided inaccurate, misleading and/or incomplete credit information to the consumer reporting agencies about Plaintiff. This inaccurate, misleading, and/or incomplete credit information was reported by the CRA Defendants to Plaintiff's

potential lenders and others in a position of evaluating Plaintiff's creditworthiness, credit standing, credit capacity, character, and general reputation.

95. Plaintiff has notified the CRAs of her disputes of the information being reported by the Furnisher Defendants. Upon information and belief, a form of Plaintiff's disputes and requests for reinvestigation were forwarded to the Furnisher Defendants by the CRA Defendants.

96. Information was available to the Furnisher Defendants that should have, upon a reasonable investigation, informed the Furnisher Defendants that their reporting was inaccurate, misleading, incomplete and/or could not be verified.

97. The Furnisher Defendants know, should know or act recklessly in not knowing that they were reporting and verifying inaccurate information to the CRAs.

98. The Furnisher Defendants know, should know or act recklessly in not knowing that they could not verify the accuracy of the information they were furnishing to the CRAs.

99. There is no reasonable interpretation of credit reporting law that could justify the Furnisher Defendants' reporting of the fraudulent tradelines, collection accounts, public records, and identifying information.

100. Despite their knowledge that the information being reported to Plaintiff's credit files was inaccurate, misleading, incomplete and/or could not be verified, the Furnisher Defendants repeatedly reported the information and repeatedly verified the information as accurate, knowing that by doing so, Plaintiff's creditworthiness would be damaged.

101. The Furnisher Defendants have taken actions that violate the FCRA, specifically Section 1681s-2(b). These actions include, but are not limited to, the following: (a) reporting inaccurate, misleading and/or incomplete information to the CRAs; (b) failing to fully, properly or reasonably investigate Plaintiff's requests for reinvestigation; (c) failing to review all relevant information regarding Plaintiff's requests for reinvestigation and/or disregarding that information after review; (d) after receiving notice of Plaintiff's requests for reinvestigation, continuing to submit inaccurate, misleading and/or incomplete information to the CRAs; (e) failing to modify, delete or permanently block the reporting of credit information regarding Plaintiff which the Furnisher Defendants knew to be inaccurate, misleading and/or incomplete; (f) failing to verify the accuracy of the information Plaintiff disputed; and (g) failing to accurately respond to Plaintiff's requests for reinvestigation made through the CRAs after receipt of those disputes.

102. The Furnisher Defendants know that the information it provided to the CRAs was false, inaccurate, misleading, incomplete and/or could not be verified.

103. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

104. The acts and/or omissions of the Furnisher Defendants made in violation of the FCRA were willful, entitling Plaintiff to recover the remedies provided in Section 1681n.

105. The acts and/or omissions of the Furnisher Defendants made in violation of the FCRA were negligently made, entitling Plaintiff to recover the remedies provided in Section 1681o.

## Jury Demand

Plaintiff demands trial by jury.

## Request for Relief

Plaintiff respectfully requests that the Court grant any and all of the following relief: (a) actual damages; (b) statutory damages in an amount to be

determined at trial; (c) punitive damages in an amount to be determined at trial; (d) costs and attorney fees; and (e) any other relief the Court deems just and proper.

Respectfully submitted,

*/s/Guerino Cento*
Guerino Cento
CENTO LAW
5666 Carrollton Avenue
Indianapolis, Indiana 46220
(317) 908-0678
cento@centolaw.com